MARC FEINSTEIN (S.B. #158901)
mfeinstein@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California 90071-2899
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREDERICK W. HSU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AARON M. ZEISLER, an individual, BRIAN A. BURNS, an individual, and WINSLOW STRONG, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

**COMPLAINT**

Plaintiff Frederick W. Hsu brings this Complaint against Defendants Aaron M. Zeisler, Brian A. Burns, and Winslow Strong for violation of a confidentiality order issued in an arbitration in which they were involved as a party or counsel.

**INTRODUCTION**

1. Confidentiality is a pillar of legal practice. More so than most professionals, attorneys work in an arena that requires strict adherence to confidentiality requirements to operate effectively—not just to protect client confidences but also to preserve the integrity of the judicial system. This obligation carries great weight when an attorney or the attorney's client is bound by

a formal confidentiality order to keep protected material confidential. Confidentiality is also often a factor in the decision of parties to submit their dispute to private arbitration.

2. In this case, attorneys Aaron Zeisler and Brian Burns, partners in Zeisler PLLC, did not simply fail to protect confidential information about an arbitration award (the "Arbitration Award") that a signed confidentiality order (the "Confidentiality Order") barred them from disclosing. Nor did they inadvertently breach the Confidentiality Order through carelessness or technological error. Rather, Zeisler and Burns deliberately schemed to disclose confidential information for their own financial benefit by using it to solicit new clients and for coercive settlement purposes.

3. Zeisler and Burns received assistance in this breach from an existing client, Winslow Strong, whom they represented in the arbitration. Strong conspired with the two attorneys to identify new clients and aid their attempt to fish for additional remuneration.

4. Plaintiff Fred Hsu—a director of Mobile Gaming Technologies, Inc., and a target of both the arbitration and of Defendants' efforts to leverage it into a second payday—will have no trouble proving their breach of confidentiality. He has a smoking gun. On April 11, 2022, Hsu's counsel received a settlement demand from Zeev Kirsh, then the attorney for a new client solicited by Defendants, explaining that he was "contacted recently by Winslow Strong and his attorney Brian Burns of Zeisler Law" and revealing his knowledge of the outcome of the arbitration. At the time Kirsh contacted Hsu, there was no public record of the arbitration's outcome.

5. This egregious misuse of information from the arbitration proceeding violates the March 25, 2021 Confidentiality Order issued by Arbitrator Jiyun Cameron Lee of the American Arbitration Association's International Centre for Dispute Resolution and signed by Burns on behalf of himself and Zeisler as attorneys for the claimants. That Order clearly applies to the Arbitration Award and its contents. The Order expressly states: "All Protected Material . . . shall be kept confidential . . . and all Protected Material shall be used only in connection with the Arbitration." The Order defines "Protected Material" as "all Evidentiary Material, pleadings, submissions, filings, transcripts and orders in this Arbitration," as well as "[a]ll copies,

reproductions, extracts, digests and complete or partial summaries prepared from any Protected Material."

6. The Order provides a limited exception to the bar on disclosure. A party in receipt of Protected Material may disclose such information "to a court" if "reasonably necessary to enforce an award granted in the Arbitration." Should that need arise, the Order requires the receiving party to notify the producing party of its intent to make the disclosure and give the producing party 14 days to take appropriate action "to seek safeguards for the confidentiality of the Protected Material."

7. Defendants' disclosure satisfied none of these criteria. First, they had no need, reasonable or otherwise, to enforce the award—it had already been paid. Second, they made their disclosure to another would-be plaintiff—not a court. Third, they provided no notice whatsoever to Hsu. Indeed, having disclosed the outcome of the arbitration to Kirsh and his client clandestinely, Defendants were surprised and displeased to learn that Hsu had become aware of their improper solicitation efforts.

8. When Hsu's counsel alerted Zeisler and Burns that the information they shared with Kirsh constituted a violation of the Confidentiality Order, Zeisler and Burns recognized the hole they had dug for themselves. In an ill-conceived scheme to cover their tracks, they dug the hole even deeper.

9. By October 2022, Zeisler and Burns had found five additional plaintiffs to bring virtually identical claims against Hsu and others, and they filed a complaint to which Hsu demurred, primarily on statute of limitations grounds. In a futile attempt to avoid that barrier to their lawsuit—and slip the confidential Arbitration Award through the backdoor and into the public record—Zeisler and Burns filed an amended complaint on April 28, 2023 (the "Amended Complaint"). It alleged that their new clients did not discover the cause of their alleged injuries until April or May 2022, when "each Plaintiff learned for the first time about the Arbitration and the Arbitration Award." The Amended Complaint goes on to quote the arbitrator's findings and recite the amount of the award, all in further violation of the Confidentiality Order.

10. Nowhere in the Amended Complaint do these plaintiffs explain the mystery of how they "learned for the first time" about the Arbitration Award that, again, was unknown to the general public. The only reasonable conclusion is that Zeisler and Burns shared this information with their new clients. Indeed, the Amended Complaint should itself be viewed as an admission of Zeisler's and Burns's breach.

11. Doubling down on their misuse of confidential information, Zeisler and Burns concurrently filed a petition in federal court seeking "confirmation" of the Arbitration Award. That gratuitous filing further underscores Zeisler's and Burns's willful disregard of the terms of the Confidentiality Order. While the Confidentiality Order allows a party to disclose Protected Material to a court for the limited purpose of ***enforcing*** an award, there is nothing here to enforce. Any amounts owed under the award were satisfied in full more than a year before Zeisler and Burns moved to "confirm" it.

12. To enforce the Confidentiality Order and to deter Defendants from further breaches, Hsu respectfully requests that this Court (i) order Defendants to withdraw their confirmation petition, (ii) order Defendants to strike references to the arbitration from the Amended Complaint, (iii) order Defendants not to use the Arbitration Award in soliciting other clients, and (iv) award Hsu damages, attorneys' fees, and whatever additional relief the Court may determine to be just and equitable.

**PARTIES**

13. Plaintiff Fred Hsu is an individual residing in Irvine, California.

14. Defendant Aaron Zeisler is an individual residing in New York and the managing member of Zeisler PLLC, whose principal place of business is 45 Rockefeller Plaza, 20th floor, New York, New York.

15. Defendant Brian Burns is an individual residing in New York and a partner at Zeisler PLLC, whose principal place of business is 45 Rockefeller Plaza, 20th floor, New York, New York.

16. Defendant Winston Strong is an individual residing in Puerto Rico.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §°1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

18. Venue lies within this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District.

**DIVISIONAL ASSIGNMENT**

19. Pursuant to Civil Local Rule 3-5(b), assignment to the San Francisco division is appropriate because a substantial part of the events giving rise to the claim occurred in San Francisco, including the arbitration and the federal confirmation petition, as discussed in more detail below.

**FACTS**

20. Fred Hsu, a UCLA graduate in computer science, is an entrepreneur, technologist, angel investor, and startup adviser, who has devoted more than two decades to developing software solutions and unlocking the potential of machine learning. He founded Manage.com, a leading provider of mobile software and data solutions that was voted one of the Best Places to Work in the San Francisco Bay Area in 2015. That same year, Hsu was named an E&Y Entrepreneur of the Year semifinalist for Northern California.

21. Hsu is a director of Mobile Gaming Technologies, Inc. ("Mobile Gaming"), an Oakland-based, Delaware-registered computer software company. He is also a director of CashBet, a Mobile Gaming subsidiary based in the Island of Alderney, which is part of the Bailiwick of Guernsey, a self-governing territory located in the English Channel Islands.

22. ***The Federal Lawsuit.*** In 2018, CashBet created a cryptocurrency, the CashBet Coin, which it marketed as a casino chip for use on its online gambling platform. CashBet issued the coins to investors through an initial coin offering ("ICO"). When the price of CashBet Coins plummeted that same year, two cryptocurrency speculators, Winslow Strong and Nirvana Capital Limited, filed suit on December 12, 2018, in the U.S. District Court for the Northern District of California (the "Strong Complaint"). Represented by Zeisler and Burns, the plaintiffs brought

causes of action for violations of the Securities Act of 1933 and for fraud against Mobile Gaming, Hsu, and other officers or directors.

23. The Strong Complaint received extensive coverage in the crypto press. In fact, the day after the lawsuit was filed, Bloomberg Law published an article titled, "Gaming Platform's Coin Offering Draws Securities Suit," and opened by stating that a "mobile gaming platform faces a suit alleging it misled investors who acquired CashBet Coins through the company's April initial coin offering." Over the next few weeks, the Strong Complaint was further publicized online. For example, it was discussed in an article titled "Cashbet ICO deal turns sour" published on reviewed-caisnos.com on December 14, 2018. On December 18, 2018, another article titled "CashBet Lawsuit Could Herald Torrent of ICO Investor Claims" was published on cryptobriefing.com. And, on December 27, 2018, an article titled "A tsunami of ICO investor claims may result from CashBet lawsuits in US" was published on leaprate.com, which stated that similar lawsuits may follow against Mobile Gaming.

24. ***The Arbitration.*** In 2019, the federal litigation was stayed pending arbitration, and, in 2020, an arbitration was initiated in Guernsey before the International Centre for Dispute Resolution and subsequently moved to San Francisco. To ensure the integrity of the proceedings, and "at the request of the Parties," Arbitrator Jiyun Cameron Lee issued a Confidentiality Order on March 25, 2021. The Arbitrator began by outlining the goals of the Order: to promote "the interests of efficiency and economy, including the avoidance of ancillary disputes among the parties . . . concerning the exchange of documents containing confidential or proprietary information or the inadvertent production of privileged material."

25. Section (4) of the Order, titled "Confidentiality of the Arbitration," states that all Protected Material . . . shall be kept confidential by the Arbitral Tribunal, the Administrator and the Parties, and all Protected Material shall be used only in connection with the Arbitration." Section (1)(e) of the Order defines Protected Material as "all Evidentiary Material, pleadings, submissions, filings, transcripts and orders in this Arbitration," as well as "[a]ll copies, reproductions, extracts, digests and complete or partial summaries prepared from any Protected Material."

26. Section (5)(b) of the Order permits a party in receipt of Protected Material to disclose it "to a court as reasonably necessary to enforce an award granted in the Arbitration." But the same section cautions that, before making such a disclosure, the "Receiving Party shall promptly notify the Producing Party of the Receiving Party's intent to make the disclosure and afford the Producing Party fourteen (14) days from such notification to take appropriate action to seek safeguards for the confidentiality of the Protected Material for purposes of such proceedings."

27. Recognizing the potential damage inherent in an unauthorized disclosure, Section (9) requires the responsible party to "bring all pertinent facts relating to such disclosure to the attention of the counsel of record for the Producing Party within ten (10) days of learning of the disclosure and . . . make every effort to prevent further disclosure by the Party responsible for disclosure."

28. Finally, to further limit the potential for improper disclosure, Section (12) directs that within 30 days of "issuance of a final award resolving all issues in this Arbitration that is not timely challenged or enforced, . . . all originals and copies of Protected Materials shall be destroyed by each Receiving Party."

29. Burns signed the order above a signature block containing his and Zeisler's names. An attorney for Hsu and the other respondents signed it. And so did the Arbitrator.

30. In December 2021, the Arbitrator issued an award, and any amount owed under the award was promptly paid in full.

31. ***The Solicitation.*** After the arbitration was concluded, Zeisler and Burns went fishing for another payday. They hoped to leverage the arbitration proceedings to drum up more plaintiffs, even if that meant flouting the Confidentiality Order. Zeisler and Burns were willing to take that risk as long as they could drag Hsu into more litigation or pressure him into a settlement.

32. Strong, despite already getting paid, conspired with Zeisler and Burns. On information and belief, Strong worked with the two attorneys to help identify and solicit new plaintiffs because he faced millions of dollars of exposure for his role in an adversarial bankruptcy proceeding. Identified in the press as a "crypto-whale," Strong is alleged to have sold

a worthless bond to failed cryptocurrency venture Cred Inc., and, by February 2022, Cred's liquidating bankruptcy trust was trying to claw back the company's allegedly fraudulent transfer of more than $21 million in Bitcoin to Strong.

33. Defendants' breach of the Confidentiality Order came to light only because counsel for one of their potential recruits revealed their misconduct. On April 11, 2022, Zeev Kirsh wrote to Hsu's representative, alerting him that he "was contacted recently by Winslow Strong and his attorney Brian Burns of Zeisler Law" and referring to the outcome of the arbitration. Kirsh sought a prelitigation settlement for his client.

34. ***The State Lawsuit.*** When Hsu's counsel raised this obvious breach of confidentiality with Zeisler and Burns, they expressed displeasure that Kirsh had taken it upon himself to reveal Defendants' scheme. But the cat was out of the bag—Zeisler and Burns had no way to erase the undeniable evidence of their effort to improperly leverage the Arbitration Award to solicit a new client. Instead, they forged ahead, and looked for a post hoc device to cover their misconduct.

35. On October 31, 2022, Zeisler and Burns filed suit in Santa Clara Superior Court against Hsu, Mobile Gaming, and others, bringing causes of action that substantially mirrored the 2018 federal action. Zeisler and Burns managed to find five new CashBet investors from various corners of the world—Florida, Australia, the British Virgin Islands, and Hong Kong.

36. On demurrer, Hsu explained that the three-year statute of limitations barred these stale claims. Given the intense focus on CashBet's struggles, the plaintiffs had ample opportunity to discover their alleged injury within the applicable limitations period.

37. Hoping to salvage their case, Zeisler and Burns devised an argument that also allowed them—albeit improperly—to slip the Arbitration Award into the record. Filing an Amended Complaint on April 28, 2023, they alleged that after the precipitous drop in the CashBet Coin's value, the plaintiffs had "diligently investigated the potential causes of their injuries," "followed crypto markets generally, and monitored developments relating to Mobile Gaming through internet searches," and yet those plaintiffs purportedly did not understand that they had a

claim until April or May 2022.[1] The event that allegedly alerted them to the availability of relief: "the Arbitration Award."

38. Hsu is currently preparing a demurrer to the Amended Complaint. Suffice to say, it is inconceivable that all five plaintiffs coincidentally learned about the confidential Arbitration Award at the exact same time, and that all five then chose Zeisler and Burns to represent them, unless Zeisler and Burns calculatedly disclosed the contents of the Arbitration Award to them in soliciting them as new clients.

39. ***The Federal Confirmation Petition.*** In yet another transparent effort to paper over their breach, Zeisler and Burns filed a petition on behalf of Strong in the Northern District of California to confirm the Arbitration Award on April 28, 2023 and moved to unseal the award. Given that the award was fully paid in January 2022, there is plainly no need to confirm it, much less enforce it. Hsu filed papers to seal the award and called out Defendants for having filed the petition for an improper purpose: to make the award public for their financial gain. In response, Defendants did not deny that this is their agenda.

40. The federal confirmation petition should be recognized for what it is: a misguided attempt to harass Hsu and bully him into a settlement. The parties' Confidentiality Order was designed precisely to avoid this kind of gamesmanship, and Hsu seeks this Court's intervention to put a stop to Defendants' blatant misuse of a confidential proceeding.

**CLAIM FOR BREACH OF CONFIDENTIALITY ORDER**

41. Hsu incorporates by reference each and every allegation contained in Paragraphs 1 through 40 of this Complaint as if set forth fully herein.

42. On March 25, 2021, Plaintiff and Defendants entered into the Confidentiality Order, a valid, enforceable, and binding written contract that was adopted as an order of the arbitrator.

43. Among other terms, the Confidentiality Order provides as follows:

---

[1] In amending the complaint, Burns and Zeisler also dropped one of the plaintiffs after Defendants presented them with indisputable evidence that the plaintiff was aware of his potential claims years ago: a 2019 letter sent by another counsel seeking a settlement for that plaintiff and acknowledging the Federal Lawsuit.

a. "All Protected Material . . . shall be kept confidential . . . and all Protected Material shall be used only in connection with the Arbitration." The Order defines "Protected Material" as "all Evidentiary Material, pleadings, submissions, filings, transcripts and orders in this Arbitration," as well as "[a]ll copies, reproductions, extracts, digests and complete or partial summaries prepared from any Protected Material."

b. An exception to the flat bar on disclosure of Protected Material is that an award may be disclosed to a court if "reasonably necessary to enforce an award," but before making such a disclosure, the "Receiving Party shall promptly notify the Producing Party of the Receiving Party's intent to make the disclosure and afford the Producing Party fourteen (14) days from such notification to take appropriate action to seek safeguards for the confidentiality of the Protected Material for purposes of such proceedings."

c. In the event of an unauthorized disclosure, the responsible party must "bring all pertinent facts relating to such disclosure to the attention of the counsel of record for the Producing Party within ten (10) days of learning of the disclosure and . . . make every effort to prevent further disclosure by the Party responsible for disclosure."

d. Within 30 days of "issuance of a final award resolving all issues in this Arbitration that is not timely challenged or enforced, . . . all originals and copies of Protected Materials shall be destroyed by each Receiving Party."

44. As alleged above, Defendants breached each of the aforementioned terms of the Confidentiality Order.

45. The Confidentiality Order specifically addresses violations of the terms of the Order after the arbitration has concluded: "In the event any Party or person (i) violates any terms of this Order after the Arbitral Tribunal issues its final award, or (ii) refuses to comply with an order of the Arbitral Tribunal issued, the Parties consent to the jurisdiction of a state or federal court of competent jurisdiction in the States of with regard to any proceedings to enforce the

terms of this Order. The Parties agree that the terms of this Order survive the conclusion of the Arbitration and will be enforceable by the Court to order any and all relief that justice so requires, including, without limitation, sanctions and injunctive relief."

46. As a result of Defendants' violations, Hsu has incurred attorneys' fees and costs in excess of $75,000 to enforce the Order, and is exposed to additional damages for interference with his business relations.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A. An order directing Defendants to withdraw their confirmation petition;

B. An order directing Defendants to strike references to the arbitration from the Amended Complaint;

C. An order directing Defendants not to use the Arbitration Award in soliciting other clients or otherwise commit further violations of the Confidentiality Order;

D. An order requiring Defendants to identify all unauthorized disclosures of Protected Material and take actions to correct them in accordance with the Confidentiality Order;

E. Sanctions for violation of the Confidentiality Order including reimbursement of Hsu's attorneys' fees and costs to enforce the Order and payment of any other damages suffered by Hsu as a result of Defendants' failure to comply with the Order; and

F. Whatever additional relief the Court may determine to be just and equitable.

Dated: June 9, 2023

O'MELVENY & MYERS LLP

By: */s/William K. Pao*

Marc Feinstein
William K. Pao
400 South Hope Street
18th Floor
Los Angeles, California 90071-2899
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407

Attorneys for Plaintiff
Frederick W. Hsu